IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>OLYMPIC MILLS CORPORATION<br>d/b/a OLYMPIC GROUP AND COACHMAN<br>INCORPORATED<br><br>Debtors | |
| DCC OPERATING, INC.<br><br>Appellee-Plaintiff<br><br>vs<br><br>LUIS RIVERA-SIACA, his wife ENERY<br>ORTIZ-RIVERA, and the conjugal society<br>constituted between them<br><br>Appellants/Defendants/Third-Party Plaintiffs<br><br>vs<br><br>WAYNE S. FOREN and JOHN DOE<br><br>Third-Party Defendant<br><br>OLYMPIC MILLS CORPORATION<br>d/b/a OLYMPIC GROUP and<br>COACHMAN INCORPORATED<br><br>Intervenors | CIVIL 11-1064CCC |

**MEMORANDUM OPINION**

Luis Rivera-Siaca and the conjugal society constituted with his wife Enery Ortiz-Rivera ("Rivera") appeal an award of $850,533.00 in attorneys' fees made by the Bankruptcy Court in favor of DCC Operating, Inc. ("DCC") on September 27, 2010.  Having reviewed the briefs filed by the parties, the record before the Court and having independently reviewed the legal and factual basis for the award, and finding that the award is just and proper, this Court will enter a partial final judgment pursuant to Fed. R. Civ. P. 54(b) in favor of DCC consistent with this opinion.

The factual background of this case and much of its procedural history is recited in the prior opinion by the First Circuit Court of Appeals issued on January 17, 2007 and need

CIVIL 11-1064CCC                              2

not be repeated in full here.  Only the facts and procedural history of relevance to this appeal will be recited at this juncture.

DCC lent approximately $2.5 million to Coachman Incorporated ("Coachman") and Olympic Mills Corporation ("Olympic") ("Debtors") on condition that Rivera agree to subordinate his loans to the Debtors pursuant to a Subordination and Standby Agreement ("Agreement").  The Agreement also provided that in the event Rivera did receive any money in repayment of his loans, he would act as DCC's Trustee and immediately turn over so much of the funds as would pay off DCC's loan.  The Debtors experienced financial difficulties and as their financial difficulties grew worse, Rivera, the president of the Debtors, arranged for the Debtors to repay him approximately $5.6 million on account of his loans.

On November 7, 2001 DCC filed a diversity claim against Rivera in this Court ("DCC v. Rivera").  Shortly thereafter, on November 26, 2001, Debtors filed for protection under Chapter 11 of the United States Bankruptcy Code ("In re Olympic").  DCC then filed a motion for summary judgment in this Court.  The facts were not in dispute and on December 12, 2002 this Court entered a summary judgment on the issue of liability but did not make a finding as to damages.  On December 26, 2012, Rivera challenged diversity jurisdiction for failing to join the Debtors which, according to Rivera, were non-diverse indispensable parties.  **APP 506**.

In the meantime, on December 19, 2002 Debtors obtained the bankruptcy court permission to hire attorneys at rates between $590.00 an hour for partners and $185.00 an hour for associates.  **APP 525**, **APP 648**.  On December 26, 2002 Debtors filed a motion to intervene, explaining that Debtors' rights to participate in the case implicated the core bankruptcy jurisdiction pursuant to 28 U.S.C. § 157(b)(2)[A], [E], [F], [H] and [O] and requested that the case be referred to the bankruptcy court.  **APP 553, 561**.

On December 31, 2002, this Court granted Coachman and Olympic's motion to intervene, **APP 567**, and subsequently transferred DCC v. Rivera to the bankruptcy court

CIVIL 11-1064CCC                            3

on April 29, 2003, as a core bankruptcy case pursuant to 11 U.S.C. § 157. **APP 625**. The resulting case proceeded as an Adversary Proceeding, DCC v. Rivera, No. 03-90.

On December 15, 2003, Rivera repeated his challenge to diversity jurisdiction in the bankruptcy court. Compare **APP 506** with **APP 2055**.

On September 2, 2004, the Court below entered partial final summary judgment awarding damages as against Rivera and stated: "The issue of attorneys' fees and costs are deferred until such time as the full amount can be ascertained." **APP 2561**.

Rivera appealed to the Bankruptcy Appellate Panel on September 7, 2004, **APP 2613**, where the partial final judgment on damages was affirmed pursuant to a *de novo* review. **APP 2630a 1-34**.

On January 17, 2007, the First Circuit affirmed both the summary judgment on liability and damages, again, pursuant to a *de novo* review. In doing so, the First Circuit held that this Court had diversity jurisdiction notwithstanding the fact that non-diverse parties – Coachman and Olympic – filed for bankruptcy protection and intervened in the case. DCC Operating Inc. v. Luis Rivera-Siaca (In re: Olympic Mills Corp.), 477 F.3d 1, 31, 46 (1st Cir. 2007). **APP 2638.** Later, the First Circuit issued an Order stating: "[t]he issue of entitlement to attorneys' fees incurred in connection with the appeal, as well as the amount, is remanded to the Bankruptcy Appellate Panel, with directions to remand the same to the bankruptcy court for determination." Rivera's Motion to Reconsider that remand to the bankruptcy court for the determination of attorneys' fees was denied. Id.

After receiving the mandate from the First Circuit, the bankruptcy court issued a payment order on March 28, 2007 ordering the payment of $4,257,065.20 to DCC. **APP 2658**.

Thereafter, discovery ensued on the fee issue in the bankruptcy court. Rivera filed multiple motions for extensions of time. The parties filed motions, made evidentiary presentations and submitted the matter to the judicial officer who had handled the case over

CIVIL 11-1064CCC                                    4

the course of five years during which he had the opportunity to observe the quantum and quality of the legal work done in the case by both parties' counsel.

On February 14, 2008, Debtors filed a motion in the DCC v. Rivera to voluntarily dismiss their intervention.  **APP 2973**.  That motion was granted in a minute Order dated February 15, 2008.  **APP 3140**.

On April 8, 2008, Rivera filed a motion requesting the bankruptcy court to remand the case to this Court.  Rivera argued that the bankruptcy court lost bankruptcy jurisdiction because Olympic and Coachman were no longer parties.  **APP 3366**.  The bankruptcy court rejected that argument, explaining that the case had been referred as a core proceeding. **APP 3401**.

On July 21, 2008, the bankruptcy court heard oral arguments on DCC's motion for partial summary judgment.  On that day, Rivera filed a Fed. R. Civ P. 60 motion claiming that a recent Supreme Court case, Republic of Philippines v. Pimentel, 128 S.Ct. 2180 (June 12, 2008) case mandated dismissal on jurisdictional grounds.  **APP 3685**.  The bankruptcy court denied that motion.  **APP 3792**.

Rivera appealed the jurisdiction issue to this Court on November 20, 2008. **APP 3796**.  This Court dismissed that appeal on August 5, 2009 because he failed to comply with Fed. R. Bankr. P. 8006.  **APP 3608**.  The First Circuit summarily dismissed Rivera's appeal in February 2010 and denied his motion for re-hearing and rehearing en banc on March 31, 2010.  **APP 3814**.

After the First Circuit remanded the case, Rivera once again challenged jurisdiction, making the same argument he had previously, i.e., that once Olympic and Coachman had been dismissed as interveners, the bankruptcy court lost jurisdiction.  **APP 3825**.  The bankruptcy court denied that motion as well.

The bankruptcy court then issued its opinion and awarded DCC attorneys' fees in the amount of $850,533.00.  **APP 3839**.  The Court below also noted that award did not prohibit

CIVIL 11-1064CCC                                    5

DCC from requesting additional fees and expenses incurred after the date of its decision if
Rivera appealed.  **APP 3840, 3846**.

      Rivera appealed the partial summary judgment to this Court.

**I.**

**JURISDICTION AND STANDARD OF REVIEW**

      Rivera challenges the jurisdiction of the lower court and seeks a remand to the
bankruptcy court.  Rivera argues that this Court must independently re-consider subject
matter jurisdiction and, if it finds that bankruptcy jurisdiction was lost when Olympic and
Coachman ceased being interveners in the case, the Court should withdraw its reference
to the bankruptcy court.  This Court would then have to review the attorney fee request *de
novo*.  In his reply brief, Rivera cited to the Supreme Court's recent ruling in Stern v.
Marshall, 547 U.S. 293 (2011), arguing that this case was originally brought as a state law
claim in a diversity action prior to the filing of the Olympic and Coachman bankruptcies and
has nothing to do with the bankruptcy cases.

      This Court has made an independent review of the bankruptcy jurisdiction issue and
has reviewed the Stern case.  Had the Debtors' prevailed in DCC v. Rivera or Olympic v.
Rivera, however, DCC's claim against Rivera would have failed.  Because DCC's entire case
could have been disposed of had the Debtors prevailed, Stern does not apply.  Rivera
himself so argued before the bankruptcy court.  **APP 1180-1181**.  Furthermore, Rivera's
argument before this Court, that the bankruptcy court was divested of jurisdiction because
Debtors' claims in both of the cases were settled, is contrary to the usual rule that "'the
jurisdiction of the court depends upon the state of things at the time of the action brought.'"
DCC v. Rivera, 477 F.3d 1, 7 (2007).

      Finally, the Court finds that the jurisdiction issue is moot.  The First Circuit has
unequivocally determined that this Court has diversity jurisdiction pursuant to 28 U.S.C.
§ 1332.  The First Circuit remanded the case to the bankruptcy court for the purpose of
determining the attorney fee award, an action provided for by Fed R. App. P. 48 ("A court

CIVIL 11-1064CCC                                6

of appeals may appoint a special master" who may be an individual, court employee or a judge.).

The Federal Rules of Civil Procedure also provide for persons other than Article III judges to make proposed determinations regarding attorneys' fees. Fed R. Civ. P. 54(d)(2) provides the Court wide discretion in resolving attorney fee disputes, including by referring the matter to a Magistrate Judge. If a party disagrees with the Magistrate Judge's report, they can obtain *de novo* review by an Article III judge by making specific objections to the proposed finding and recommendations pursuant to Fed R. Civ. P 72(b)(2).

In this case, the judgment appealed from is a partial, final summary judgment entered pursuant to Fed. R. Bankr. P. 56.

As such, the role of this Court is to review the record *de novo*.

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material fact. That entails supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the movant bears the burden of proof. Once the movant has fulfilled this obligation, the burden shifts to the opposition of summary judgment to demonstrate that a trialworthy issue exists. In the last analysis, summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. **This same paradigm governs our *de novo* review of a district court's grant of summary judgment**. Plumley v. Southern Container, Inc., 303 F.3d 364, 367-368 (1st Cir. 2002) (emphasis added) (internal citations omitted).

As it was required to do, this Court has reviewed the record, including the daily time records and explanatory information provided by DCC. The Court has also reviewed the materials submitted by Rivera to the bankruptcy court. Furthermore, the Court has reviewed

CIVIL 11-1064CCC                                      7

Rivera's arguments on the underlying merits as they relate to the award of attorneys' fees. In addition, this Court takes judicial notice of the findings of the Court below and has reviewed Rivera's objections to the lower court's findings in the same manner as it would pursuant to Fed. R. Civ. R. 54(d)(2)(C) and (D) and Fed. R. Civ. P. 72(b)(3). After reviewing the record before it, together with the objections and arguments presented by the parties in this proceeding, the Court has arrived at its conclusions regarding the evidence and the law. There are no disputed issues of fact and judgment shall issue as a matter of law.

## A.   Applicable Law

### 1.   Applicable Substantive Law

The First Circuit determined that "Delaware provides the substantive governing law." DCC Operating, Inc. v Luis Rivera Siaca (In re: Olympic Mills Corp.), 447 F.3d 1, 10 (2007). Rivera now argues, however, that DCC stipulated that its claim for attorneys' fees did not arise pursuant to the contract between the parties. Therefore, Rivera asserts Puerto Rico rather than Delaware law must apply. Rivera's position that "DCC expressly waived its remedies for fees and costs under the Agreement," Rivera's opening brief at p. 31, is not well taken.[1]

> To evaluate this argument, the Court first reviews the stipulation itself. It states:
>
> Plaintiff stipulates that it is not claiming an award of attorneys' fees and costs in this case based on the contractual costs and attorney fee shift provisions in the Subordination and Standby Agreement. Instead, DCC seeks attorneys fees and costs as articulated in DCC's Brief Regarding The collection Of Attorneys Fees And Costs (Docket #175) and DCC's Motion to Amend DCC's Attorney Fee And Expense Claims (Docket #204), as granted by the Court's Order (Docket #211).

**APP 2846**.

Rather than waiving its rights pursuant to the contract, DCC waived any claim for attorneys' fees pursuant only to the one provision of the contract that related to the shift of

---

[1]The correspondence between counsel regarding the stipulation shows that Rivera sought a stipulation that would support his argument but DCC never agreed to Rivera's version. See **APP 2949-2957**. Instead, DCC always maintained that Delaware law applied. See **APP 2945a-005 through 2945a-006.**

CIVIL 11-1064CCC                                          8

attorney fees.  Indeed, the lower court determined that the attorney fee shift provision of the

contract was inapplicable to DCC's claims for attorneys fees spent to enforce terms of the

Agreement.  **APP 2556-2557**.

DCC did not waive the choice of law provision of the contract, however.  That

provision states: "This Agreement shall be governed by and construed in accordance with

the laws of the State of Delaware, excluding that body of law relating to conflict of laws."

**APP 360**.   Given the fact that the claim for attorneys' fees arises from the Trustee

obligations imposed upon Rivera by the contract and given the fact that the parties agreed

to be governed by the law of Delaware, this Court finds that Delaware law controls.

Rivera's argues that in diversity cases attorney fee issues are always considered

"procedural" and therefore subject to the local law regarding attorneys' fees is not the case.

The First Circuit has addressed the issue if the award of attorneys' fees in a diversity

jurisdiction context, finding that the award of attorneys' fees should be based on the local

jurisdiction's laws when the award is made because of litigation abuse as distinguished from

the underlying right of a party to be awarded fees pursuant to the laws of the foreign

jurisdiction.  However, the First Circuit in Servicios Comerciales Andinos, S.A. v. Gen. Elec.

del Caribe, Inc., 145 F.3d 463, 479 (1st Cir. 1998), noted that the courts of the

Commonwealth of Puerto Rico consistently follow the choice of law rules laid out in the

Restatement (Second) of Conflict of Laws and in its analysis, the Servicios Court stated:

> The four factors listed by the Restatement to be taken into consideration in
> making this determination: (1) "whether the issue is one to which the parties
> are likely to have given thought in the course of entering into the transaction;"
> (2) "whether the issue is one whose resolution would be likely to affect the
> ultimate result in this case;" (3) "whether the precedents have tended
> consistently to classify the issue as 'procedural' or 'substantive' for
> choice-of-law purposes;" and (4) "whether an effort to apply the rules of the
> judicial administration of another state would impose an undue burden upon
> the forum."

See Restatement (Second) of Conflict of Laws, § 122 cmt. a.  Id. at 480.  In the context of

this case, the parties specifically agreed that the laws of Delaware would apply; the outcome

would have likely be affected because DCC would receive its fees even in the absence of

CIVIL 11-1064CCC                                    9

litigation abuse; "laws providing for awards of attorneys' fees have not been consistently classified as either 'procedural' or 'substantive' for choice-of-law purposes, either in Puerto Rico or elsewhere," Id.; and the use of the Delaware law would impose no undue burden upon this forum.

### 2.    Rivera's Liability for Attorneys' Fees

Under Delaware common law, an award of attorneys' fees against Rivera is justified because the litigation itself was made necessary by his defalcation.  Rivera committed a defalcation and forced DCC into long and protracted litigation lasting over a decade.  In those circumstances, a beneficiary is especially entitled to attorneys' fees. Dardovitch v. Haltzman, 190 F.3d 125, 146 (3rd Cir. 1999) ("a trustee may be found liable for a beneficiary's attorney's fees when the trustee has acted wrongfully, **especially where the litigation itself is made necessary by the trustee's defalcation**") (emphasis added). See also Barrows v. Bowen, 1994 Del. Ch. LEXIS 164, *3 ("where the action giving rise to the suit involved conduct that was totally unjustified . . . attorney's fees are considered an appropriate part of damages") (citations and internal quotations omitted).  See also Judge v. City of Rehoboth Beach, Del. Ch., 1994, LEXIS 55, C.A. No. 1613, Chandler, V. C. (Apr. 29, 1994) (bad faith exists where a defendant requires a plaintiff to utilize the courts in order to enforce a right which clearly belongs to the plaintiff).  Under the circumstances presented in this case, where no material facts were in dispute and all of the issues have been decided pursuant to summary judgments, an award of attorneys' fees against Rivera is warranted pursuant to the common law of Delaware.

### 3.    The Quantum of Fees Awarded

In this summary judgment context, the Court finds that DCC has met its burden of proof, showing that it paid over $1.3 million in attorneys' fees that were documented by daily time records.  The record is also clear that the hourly fees charged by DCC's lawyers were reasonable as well.  Certainly, they were well below the rates charged by the Debtors' counsel, which hourly rates were found to be reasonable in the underlying bankruptcy cases.

CIVIL 11-1064CCC                                        10

In examining the quality of the legal work performed by DCC's counsel, this Court finds that they were not only was competent, but their efforts resulted in a recovery of nearly $4.3 million in the litigation thus far.

As can be seen by a review of the docket sheets in this case alone, it is obvious that a great deal of time was spent addressing and overcoming all of the defenses that Rivera raised throughout the last 11 years.   Looking at a simple percentage calculation, DCC counsel charged less than thirty percent of the recovery obtained.

The Court takes judicial notice of the opinion and the judgment of the Court below. In this context, the Court will look at the specific objections raised by the parties to determine what factual issues need to be examined *de novo,* just as a trial judge would have to consider only the material facts in dispute in a summary judgment context.  The Court's first observation is that DCC did not seek an upward adjustment when it was before the Court below nor did it raise an objection to the amount awarded by the Court below.  In reviewing the findings made by the bankruptcy court, this Court sees no reason to review the award for an upward adjustment now.

Rivera raised both legal and factual issues.   The Court will address the legal objections first.

(a)      *Delaware statue codified Delaware common law.*

Rivera raises a Constitutional issue by arguing that he should not be subjected to a statute that was not enacted until after the parties entered into their agreement. The Court below did not consider the issue because it was raised too late.  The Court finds that Rivera's argument is without merit.   The record shows that Rivera himself asserted that the statute merely codified the common law allowing a court to award attorneys' fees against a Trustee for "conduct . . . of a gross or inexcusable nature . . . . bad faith . . . self dealing or overreaching."  **APP 3626**.  In this case, Rivera acted as DCC's Trustee, held DCC's money, put that money to his own use and did not turn it over until after DCC was forced to sue and win its case.   That

CIVIL 11-1064CCC                              11

conduct was inexcusable, was overreaching and constituted self dealing.  The mere fact that Rivera forced DCC into litigation is reason enough to award attorneys' fees under Delaware law.  Thus, whether the award was made pursuant to the Delaware statute or pursuant to the common law of Delaware, the result would be the same.

      *(b)     Rivera should have to pay for all aspects of this proceeding.*

The bankruptcy court limited its award to the fees DCC expended in this proceeding, as distinguished from the underlying bankruptcy proceedings and the related adversary proceedings.  Rivera claims that attorneys' fees should not be awarded for various aspects of this case – fees associated with the third party complaint; the resolution of the jurisdictional issues; the original referral of this case to the bankruptcy court; the appeal to the BAP; and the appeal to the First Circuit.  The arguments made to exclude an award of fees from those aspects of the case miss the mark.  The conduct upon which the attorneys' fees are being awarded is not for litigation abuse, even though Rivera did engage in litigation abuse throughout all of the proceedings.

      *(c)     The lodestar analysis.*

Rivera claims that the Court below failed to use the lodestar analysis.  That simply is not the case.  The Court below explicitly stated utilized lodestar factors when he found that the time spent and the fees charged were both reasonable and necessary under the facts of this case, that the questions raised in this case were novel and difficult, that the attorneys for [DCC] had the skill required to perform the legal services necessary for the case, and that the fees are reasonable for the results obtained.  After a review of the record, this Court finds that the fees charged were reasonable and necessary, that DCC's counsel had the skill required to perform the job and that the fees were reasonable for the results obtained.  No further exploration of the lodestar factors need to be made.

CIVIL 11-1064CCC                                12

## II.

## CONCLUSION

Having reviewed the entire record in this matter, the award for attorneys' fees made by the Court below *de novo*, considered the briefs filed by Rivera and DCC, the Court hereby awards DCC $850,533.00 in attorneys' fees.  The judgment shall be entered as a partial final judgment pursuant to Fed. R. Civ. P. 54(b), so that DCC can apply for additional fees when the full amount of said fees can be ascertained.

SO ORDERED.

At San Juan, Puerto Rico, on September 28, 2012.

S/CARMEN CONSUELO CEREZO
United States District Judge